NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13799


COMMONWEALTH  vs.  BRIAN DONOVAN.



Norfolk.     January 7, 2026. - March 31, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Constitutional Law, Assistance of counsel.  Practice, Criminal,
Assistance of counsel, Transfer hearing, New trial.
Juvenile Court.  Rape.




Indictments found and returned in the Superior Court
Department on February 21, 2018, following a transfer hearing in
the Norfolk County Division of the Juvenile Court Department
before Linda G. Sable, J.

The cases were tried before Douglas H. Wilkins, J., and a
motion for a new trial, filed on May 17, 2024, was considered by
Michael P. Doolin, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Ruth O'Meara-Costello for the defendant.
Meagen K. Monahan, Assistant District Attorney, for the
Commonwealth.
The following submitted briefs for amici curiae:
Suma V. Nair for Boston Bar Association.
Matthew A. Wasserman, of New York, Radha Natarajan,
& Joshua M. Daniels for New England Innocence Project & others.

Afton M. Templin, Committee for Public Counsel Services, for youth advocacy division of the Committee for Public Counsel Services & another.

WENDLANDT, J.  This case presents the question whether a defendant who was a minor at the time the crime was committed but an adult when charged is entitled to the effective assistance of counsel at a transfer hearing held pursuant to G. L. c. 119, § 72A (§ 72A) -- a hearing during which a Juvenile Court judge determines, inter alia, whether the defendant should be tried as an adult on the criminal charge or be discharged, thereby ending the prosecution.  We conclude that the transfer hearing is a critical stage of the criminal process at which the defendant is entitled to the effective assistance of counsel.

We further conclude that the defendant in the present matter, Brian Donovan, was denied the effective assistance of counsel in connection with his § 72A transfer hearing; counsel was unprepared to present evidence related to, inter alia, the defendant's maturity and rehabilitation over the more than two decades between the commission of the crimes charged and the transfer hearing.  Accordingly, we vacate the order denying the defendant's motion for a new trial and remand the matter to the Superior Court, where the defendant was tried and convicted following the transfer, for further proceedings consistent with

this opinion.[1]

1.  Background.[2]  In the summer of 1993, the victim was nine years old and lived in Randolph with his parents and sister, who had special needs.  The defendant, who was then fifteen years old, was performing yardwork for the victim's father when he beckoned the victim to come outside.  Once the victim was outside, the defendant invited the victim to play in the woods nearby; the victim followed him.  After instructing the victim to pull down his own pants, the defendant fondled the victim's penis, performed oral sex on the victim, and then told the victim to kneel.  The defendant then placed his penis in the victim's mouth.  Similar sexual assaults occurred approximately three additional times that summer.

The victim did not report the assaults at the time.  He was afraid of the defendant, who, after each assault, threatened to harm the victim and his family if the victim disclosed the assaults; the victim was particularly concerned that the defendant might harm his sister or mother.

---

[1] We acknowledge the amicus briefs submitted by the youth advocacy division of the Committee for Public Counsel Services and Citizens for Juvenile Justice, and by the New England Innocence Project, the Innocence Project, and the Massachusetts Association of Criminal Defense Lawyers; and the amicus letter submitted by the Boston Bar Association.

[2] We recite the facts based on the testimony of the victim, who was found credible by the transfer judge.

Three years later, in 1996, when the victim was approximately twelve years old, he told his parents about the sexual assaults but refused to report the abuse to the police. The victim still feared that the defendant would hurt the victim's family. The victim's parents also did not report the incidents to local police officers.[3]

In September 2016, approximately twenty-three years after the sexual assaults, the victim, who was then thirty-two years old, saw the defendant; the victim was driving, and the defendant was walking past a preschool. Prompted by the sighting, the victim reported the sexual assaults to Randolph police officers. One detective showed the victim a photograph of the defendant; the victim identified the defendant as the individual who had assaulted him. A delinquency complaint issued, charging the defendant with four counts of rape of a child with force, in violation of G. L. c. 265, § 22A, and four counts of statutory rape, in violation of G. L. c. 265, § 23.

2. Prior proceedings. Because the defendant was a minor at the time the crimes occurred but an adult when charged,[4] a

---

[3] The victim's mother was the first person to whom the victim disclosed the assaults, and she relayed the report to her brother, a Springfield police officer. It does not appear that the brother took further action; the victim's mother and her brother were deceased by the time of the transfer hearing.

[4] The defendant was thirty-nine years old when he was charged in 2017.

Juvenile Court judge (transfer judge) held a transfer hearing pursuant to G. L. c. 119, § 72A. Both the victim and his father, as well as the detective who interviewed the victim, testified at the hearing. Finding the victim's "specific and detailed" testimony to be credible, the transfer judge found probable cause to believe that the defendant committed the charged offenses.

When the transfer judge indicated her intent to also determine that it was in the interest of justice to transfer the matter to adult court, counsel for the defendant (transfer counsel) objected, stating her belief that the transfer hearing would be bifurcated such that the only issue to be considered during the first part was whether probable cause existed to believe the defendant committed the crimes charged. She believed a second hearing date would be scheduled on the question whether the public interest required discharge or transfer. The transfer judge disagreed that § 72A required bifurcation. However, she invited transfer counsel to be heard on the question whether discharge or transfer was appropriate. Transfer counsel argued that the defendant posed no risk to the public, as the matter was more than twenty years old and the defendant's criminal record contained only a single motor vehicle infraction. When asked if she planned to present evidence, transfer counsel responded that she could not do so;

she had not had a risk assessment prepared nor requested the funds to do so. Transfer counsel then requested a continuance to allow her to obtain the risk assessment and complete her preparation.

The transfer judge agreed to recess the hearing and to schedule a second date "as soon as possible"; however, transfer counsel stated that because the request for funds and filing a motion were "going to take a while," she would not be ready within a short time frame. The prosecutor stated that she did not anticipate presenting any additional evidence. Stating that she did not believe a risk assessment was the "right avenue . . . at this juncture," the transfer judge denied the continuance and found that the public interest warranted transfer of the matter to adult court.

In her subsequent written order, the transfer judge set forth several factors that she considered in determining whether to transfer the matter to adult court, including the seriousness of the alleged offenses, the defendant's family, school, and social history, the protection of the public, and the nature of any past treatment efforts. The seriousness of the crimes, particularly in light of the age difference between the victim and the defendant at the time of the sexual assaults and the defendant's threats to the victim on each of the four separate occasions, weighed in favor of transfer, the transfer judge

stated. She also noted that the defendant did not have a criminal record (save for the single motor vehicle infraction) and observed that "[n]o evidence was presented regarding [his] social history." As such, the transfer judge concluded that the defendant's personal history "appear[ed] to favor discharge."

Regarding the protection of the public, the transfer judge found that the nature of the sexual assaults -- specifically that the only relationship between the defendant and victim was proximity and opportunity -- "potentially exposes a great danger to society" and so "weigh[ed] heavily" in favor of transfer. Noting the absence of evidence as to the defendant's past treatment efforts, the transfer judge determined that this factor did "not fall in favor of either" discharge or transfer. The transfer judge then acknowledged the strong public interest in maintaining the judiciary's availability to victims seeking redress for similar crimes, particularly where child victims often come forward years after the offenses occurred. This factor "weigh[ed] heavily in favor of" transfer. In light of these considerations and based on the evidence before her, the transfer judge determined that transfer to adult court was appropriate.

A grand jury subsequently indicted the defendant on two counts of rape of a child with force in violation of G. L.

c. 265, § 22A.  Following a jury trial in the Superior Court,[5]
the defendant was found guilty on both counts.  The trial judge
sentenced the defendant to from three years to three years and
one day in State prison on count one, followed by three years of
probation on count two.

The defendant filed a timely notice of appeal.  His direct
appeal was stayed, pending resolution of his motion for a new
trial.  In his motion, the defendant argued that he received
ineffective assistance of counsel at the transfer hearing
because his transfer counsel failed to prepare to present
evidence on whether the charges against him should be discharged
or transferred.

In support of this argument, the defendant submitted, inter
alia, affidavits from transfer counsel, a former neighbor, and
an employer, as well as a postconviction sexual offender risk
assessment.  Together, these postconviction submissions showed
the defendant's maturity, social relationships, employment
history, and low risk of recidivism.  At the time of the

---

[5] The trial evidence concerning the assaults on the victim
essentially followed the evidence submitted at the transfer
hearing.  In addition to testimony from the victim, the victim's
father, and the detective who interviewed the victim, the
Commonwealth presented testimony from the intake detective, who
grew up in the same neighborhood as the victim and the defendant
and recalled seeing both boys around the neighborhood in the
early to mid-1990s, as well as an expert witness who testified
about memory and how a child victim of sexual abuse might
disclose the abuse.

transfer hearing, the defendant was the primary caretaker of his elderly father, who suffered from Alzheimer's disease. He was in a long-term relationship with his girlfriend and shared the parenting responsibilities for her child, who was autistic. He had been employed at two quick-serve restaurants for several years, and one of his employers remarked that he was a "hard worker" who "got along well with his coworkers and had some good friends at work." The defendant also argued that the transfer judge abused her discretion in denying transfer counsel's request for a continuance to hold a second hearing.[6]

The motion judge[7] denied the defendant's motion without an evidentiary hearing, concluding that transfer counsel "effectively argued at the § 72A hearing that [the defendant] did not present a risk to the public" and that the transfer judge acted within her discretion in denying transfer counsel's motion for a continuance and transferring the matter to an adult

---

[6] In his motion for a new trial, the defendant also raised several issues directed to errors at trial. In particular, he contended that trial counsel, who was not the same attorney as his transfer counsel, was ineffective for failing to challenge the victim's and victim's father's identifications of the defendant. He also maintained that trial counsel was ineffective for failing to consult a memory expert to challenge the identifications.

[7] The trial judge had retired, and a different Superior Court judge decided the defendant's motion for a new trial.

court.[8]  The motion judge did not address the defendant's other

grounds for a new trial.  See note 6, supra.  The defendant's

timely appeal from the denial of the motion was consolidated

with his direct appeal.  We allowed the defendant's application

for direct appellate review.

3.  Discussion.  On appeal, the defendant contends that he

was deprived of his right to the effective assistance of counsel

at the § 72A transfer hearing.  He also asserts that the

transfer judge erred in declining to grant transfer counsel a

continuance to prepare evidence on whether discharge was

consistent with the public interest.[9]

a.  Standard of review.  "[W]e review a judge's denial of a

defendant's motion for a new trial to determine whether there

has been a significant error of law or other abuse of

discretion."  Commonwealth v. Dew, 492 Mass. 254, 260 (2023),

quoting Commonwealth v. Tate, 490 Mass. 501, 505 (2022).  Where,

---

[8] The motion judge implicitly determined that, contrary to the defendant's argument, the transfer judge did not abuse her discretion in denying the continuance, writing, "Here, the [transfer] judge was within her discretion when she found there was an interest to protect the public and that the matter should be transferred.  She considered all relevant factors, including the severity of the alleged offense."

[9] The defendant also maintains that he was deprived of effective assistance of counsel at trial, that the trial judge erred in admitting testimony from the victim's father identifying a photograph of the defendant, and that the motion judge erred in denying the defendant's motion for a new trial without an evidentiary hearing.

as here, "the motion judge neither presided over the trial nor conducted an evidentiary hearing, we are in as good a position as the motion judge to assess the documentary evidence found within the record, thus allowing this court to review the judge's decision de novo." Commonwealth v. Eagles, 491 Mass. 210, 215 (2023), citing Commonwealth v. Mazza, 484 Mass. 539, 547 (2020).

b. Transfer hearing is a critical stage. "The right to counsel is secured both by the Sixth Amendment to the United States Constitution . . . and by art. 12 of the Massachusetts Declaration of Rights . . . ." Dew, 492 Mass. at 261 n.17. By virtue of this right, defendants are "entitled to counsel at every critical stage of the criminal process" (quotation and citation omitted). Vazquez Diaz v. Commonwealth, 487 Mass. 336, 354 (2021). See Lafler v. Cooper, 566 U.S. 156, 165 (2012) ("The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding"). "We have often noted that art. 12 provides 'greater safeguards' than those provided by the Sixth Amendment," requiring effective assistance of counsel at stages of a criminal proceeding regardless of whether the Sixth Amendment would. Dew, supra, quoting Commonwealth v. Hodge, 386 Mass. 165, 169 (1982). See, e.g., Commonwealth v. Neary-French, 475 Mass. 167, 172-173 (2016) ("The right to counsel under art. 12 attaches at a motion to

suppress hearing, a probable cause hearing, and sentencing");
Lavallee v. Justices in the Hampden Superior Court, 442 Mass.
228, 234-235 (2004) ("The right to trial counsel under art. 12
attaches at least by the time of arraignment" and "extends to
every critical stage of the criminal process" [quotations and
citation omitted]).

We conclude that the high stakes of a transfer hearing
pursuant to G. L. c. 119, § 72A, render it a "critical stage" of
the criminal process requiring the effective assistance of
counsel.  At such a hearing, a Juvenile Court judge is tasked
with first determining "whether there is probable cause to
believe that [the defendant] committed the offense charged."
G. L. c. 119, § 72A.[10]  If the judge concludes that probable
cause exists, the judge must make a second determination; in

---

[10] General Laws c. 119, § 72A, provides, in relevant part:

"If a person commits an offense or violation prior to his
eighteenth birthday, and is not apprehended until after his
nineteenth birthday, the court, after a hearing, shall
determine whether there is probable cause to believe that
said person committed the offense charged, and shall, in
its discretion, either order that the person be discharged,
if satisfied that such discharge is consistent with the
protection of the public; or, if the court is of the
opinion that the interests of the public require that such
person be tried for such offense or violation instead of
being discharged, the court shall dismiss the delinquency
complaint and cause a criminal complaint to be issued.  The
case shall thereafter proceed according to the usual course
of criminal proceedings . . . ."

particular, the judge must determine "whether the defendant should be tried as an adult on the criminal charge or be discharged, thereby ending the prosecution."[11]  Matter of a Juvenile, 485 Mass. 831, 833 (2020).  See Commonwealth v. Nanny, 462 Mass. 798, 806 (2012) (§ 72A transfer hearing presents question whether individual "will be subject to any prosecution at all" [emphases in original; citation omitted]).  As to this second inquiry, we have stated that "the determinative issue [at a transfer hearing] . . . may not be whether the defendant committed the offense but whether [he] is unlikely to recommit an offense."  Matter of a Juvenile, supra at 840.

The "potential enormity of the stakes" at such a hearing is therefore "clearly apparent":

> "If the Juvenile Court judge finds no probable cause or discharges the defendant, the prosecution is over.  If the Juvenile Court judge finds probable cause and determines that the public interest requires that a criminal complaint issue and that the case be tried, the defendant faces the possibility that he will be found guilty of the crimes charged, sentenced as an adult for offenses that he committed as a juvenile, incarcerated in a State prison, and required to register as a sex offender."

Matter of a Juvenile, 485 Mass. at 838-839.  In short, "a transfer hearing in many cases is 'the whole ball game.'"  Id. at 840.  A "thoughtful presentation by defense counsel directed

---

[11] Nothing in § 72A precludes a judge from holding a single transfer hearing on both determinations or requires bifurcation of the issues.

at both [probable cause and whether, in view of the defendant's maturity and rehabilitation, transfer is apt] is thus critical." Id., quoting J.H. v. Commonwealth, 479 Mass. 285, 290 (2018). Because a § 72A transfer hearing presents such consequential stakes, a defendant is entitled to the effective assistance of counsel.

c. Ineffective assistance of transfer counsel. In the present case, the defendant was provided with counsel for the transfer hearing. He contends, however, that transfer counsel's performance was constitutionally deficient. See Vazquez Diaz, 487 Mass. at 354, quoting Strickland v. Washington, 466 U.S. 668, 686 (1984) ("the right to counsel in a criminal case is the right to 'effective assistance of counsel'"). To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer," and that such behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." Dew, 492 Mass. at 260 n.15, quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

i. Deficient performance. The defendant does not quibble with transfer counsel's performance as it concerned the first determination required at the transfer hearing -- whether there was probable cause to believe that the defendant committed the

crimes charged. Instead, the defendant focuses on the second determination, arguing that transfer counsel's failure to prepare to present evidence on whether the defendant should be tried as an adult on the criminal charges or be discharged fell measurably below that expected of the ordinary fallible lawyer. The deficient performance test "is a flexible one, and its outcome will depend on the facts and circumstances presented as well as the procedural or other context in which the attorney's performance takes place." Commonwealth v. Mosso, 496 Mass. 768, 776 (2025). As such, "'a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct' to determine whether 'the identified acts or omissions were outside the wide range of professionally competent assistance.'" Id. at 776-777, quoting Strickland, 466 U.S. at 690.

"The decision whether to discharge or transfer requires 'consideration of the specific crime and the particular defendant . . . .'" Matter of a Juvenile, 485 Mass. at 840, quoting J.H., 479 Mass. at 290. "In making this critical discretionary decision, a judge properly might consider the age of the defendant at the time of the alleged offense . . ." as well as "the defendant's rehabilitation and evolving maturity." Matter of a Juvenile, supra at 841. The judge must evaluate the

totality of the circumstances and may consider "(a) the seriousness of the alleged offense; (b) the [defendant's] family, school and social history, including his court and [criminal or] juvenile delinquency record, if any; (c) adequate protection of the public; [and] (d) the nature of any past treatment efforts for the [defendant]." Commonwealth v. A Juvenile, 16 Mass. App. Ct. 251, 257-258 (1983), citing Two Juveniles v. Commonwealth, 381 Mass. 736, 740-741 & n.4 (1980).[12] These factors may guide a judge's determination, but they are not controlling. See Commonwealth v. Bousquet, 407 Mass. 854, 858-859 (1990) ("Since the Legislature provided specific standards for transfer in § 72A," those provisions "are applicable to . . . § 72A transfer hearing[s] and the standards set forth in § 61 . . . are not controlling").

Given the high stakes involved, "[d]efense counsel must [provide the court with adequate information to] place the defendant 'into a developmental context' that allows the court 'to understand how, if at all, the defendant's more mature development reduces the risk of reoffense.'" Matter of a Juvenile, 485 Mass. at 840, quoting J.H., 479 Mass. at 290. See J.D. Blitzman & K.J. King, Hearings Pursuant to G. L. c. 119,

---

[12] These factors derive from G. L. c. 119, § 61, § 72A's statutory predecessor. See Two Juveniles, 381 Mass. at 740-741 & n.4. See also St. 1996, c. 200, §§ 7, 13A (repealing § 61 and amending § 72A).

§ 72A:  "Aging Out" of the System, in 1 Massachusetts Juvenile Court Bench Book § 12.5, at 12-11 (Mass. Cont. Legal Educ. 3d ed. 2011 & Supp. 2014) ("A reliable determination of the significant issues that confront a judge in proceedings under this statute can be made only if all relevant developmental and contextual evidence is before the court").

The record shows that transfer counsel's performance here fell short of the "thoughtful presentation," J.H., 479 Mass. at 290, that a § 72A hearing requires.  As her request for a continuance highlighted and her posthearing affidavit acknowledged, transfer counsel's unpreparedness rendered her unable to present evidence on factors critical to the transfer judge's decision.[13]  The record reflects that transfer counsel's lack of preparation was not based on any strategic decision or "informed exercise of [transfer counsel's] prerogative to decide on the defense strategy," Commonwealth v. Kolenovic, 471 Mass. 664, 675 (2015), S.C., 478 Mass. 189 (2017), but on her mistaken belief that the transfer hearing would be bifurcated.

---

[13] In support of his motion for a new trial, the defendant submitted an affidavit from a juvenile defense attorney with substantial experience, who averred that "best practices" at transfer hearings include, inter alia, having social services experts document a client's efforts to find stability in his later life; offering the court accurate information on the risk of recidivism for juvenile sex offenders in general and a risk assessment of the defendant specifically; and documenting the defendant's employment history and adult character by calling important people in his life as witnesses.

Transfer counsel assumed that she would have a second hearing date on whether transfer was appropriate in view of the defendant's maturity and rehabilitation in the years since the crimes charged, and she further assumed that the hearing date would be scheduled so as to provide her with substantial additional time to seek leave for funds and to prepare such a presentation. The transfer judge offered to briefly recess the hearing to allow transfer counsel to prepare, but transfer counsel declined the invitation because her preparation was "going to take a while." As a result, transfer counsel did not present information bearing on the defendant's rehabilitation and maturity in the years since the offenses, nor did she identify supporting evidence or witnesses. Indeed, the transfer judge specifically commented that she had no such evidence before her.

Contrary to the Commonwealth's contention, this failure to prepare was not shored up by transfer counsel's cursory argument at the transfer hearing that the defendant did not present a risk to the public, which was unsupported by any of the available evidence other than the age of the case and the defendant's lack of a criminal record. As a result of counsel's misstep, the transfer judge did not hear evidence of the defendant's social relationships, current lifestyle, employment history, maturity, or risk of recidivism. "In light of the

serious [consequences] facing [her] client, [transfer] counsel's
performance at the . . . hearing fell 'measurably below that
which might be expected of an ordinary fallible lawyer.'"
Commonwealth v. Lykus, 406 Mass. 135, 146 (1989), quoting
Saferian, 366 Mass. at 96.[14]

_____

[14] The defendant also maintains that the transfer judge
abused her discretion in denying transfer counsel's request for
a continuance to enable her to obtain such evidence, including
an expert assessment of the defendant's risk of recidivism.
"Whether a motion for continuance should be granted lies within
the sound discretion of the judge, whose action will not be
disturbed unless there is patent abuse of that discretion, which
is to be determined in the circumstances of each case."
Commonwealth v. Fernandez, 480 Mass. 334, 340 (2018), quoting
Commonwealth v. Pena, 462 Mass. 183, 189 (2012).  "A judge
should grant a continuance only when justice so requires,
balancing the requesting party's need for additional time
against concerns about inconvenience, cost, potential prejudice,
and the burden of the delay on both the parties . . . ."
Fernandez, supra at 340-341, quoting Commonwealth v. Melo, 472
Mass. 278, 305 (2015).  "It is not an abuse of discretion
'simply because a reviewing court would have reached a different
result.'"  Commonwealth v. Espinal, 482 Mass. 190, 197-198
(2019), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27
(2014).

Here, the transfer judge offered to schedule a second date
to accommodate transfer counsel's lack of preparedness but
wanted to schedule such a hearing in short order.  Transfer
counsel rejected a second date on such a time frame, stating
that she needed more time because she intended to ask for funds
to conduct a risk assessment and that would "take a while."  The
prosecutor opposed the continuance, indicating no intent to
present additional evidence.  In these circumstances, the
transfer judge was within her discretion to deny the
continuance.  See Fernandez, 480 Mass. at 341, quoting
Commonwealth v. Chavis, 415 Mass. 703, 711 (1993) ("The judge
also must consider the over-all administration of justice, and
'give due weight to the interest of the judicial system in
avoiding delays which [the judge believes] would not measurably
contribute to the resolution of a particular controversy'").

ii. Prejudice. A successful claim of ineffective assistance of counsel also requires that the defendant prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (quotations and alteration omitted). Mosso, 496 Mass. at 780, quoting Commonwealth v. Mahar, 442 Mass. 11, 15 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Mosso, supra, quoting Strickland, 466 U.S. at 694.

In connection with his motion for a new trial, the defendant submitted evidence that counsel could have presented at the transfer hearing had she been prepared. This new evidence, which was not before the transfer judge, included that the defendant was, at the time of the transfer hearing, the full-time caregiver for his elderly father, who suffered from Alzheimer's disease. The evidence also included that the defendant was in a long-term relationship and assisted his girlfriend in parenting her son, who had autism. The evidence showed that the defendant had positive relationships with his neighbor and employer. In addition, a risk assessment conducted in 2024 found that his risk of recidivism, both at the time of the assessment and at the time of the transfer hearing in 2017, was "low."

This information about the defendant's character, lifestyle, employment history, and risk of recidivism could have been presented at the time of the transfer hearing, but transfer counsel was not prepared to present it. Indeed, the transfer judge noted that "[n]o evidence was presented" regarding the defendant's social history, or to indicate whether he engaged in treatment related to the alleged crimes.

As discussed supra, the transfer hearing is the defendant's sole opportunity to persuade the court that the charges against him should be discharged in their entirety to avoid criminal prosecution. See Matter of a Juvenile, 485 Mass. at 838. Transfer counsel's deficient performance deprived the defendant of the opportunity to make his case at this critical juncture, creating a "reasonable probability" that, if not for counsel's lack of preparedness, the transfer judge's weighing of the factors for transfer may have resulted in a different outcome. Mosso, 496 Mass. at 780, quoting Mahar, 442 Mass. at 15.

The Commonwealth contends that the defendant's new evidence is merely cumulative of the criminal record evidence presented at the transfer hearing, and that it fails to disturb the factors that the transfer judge relied on -- namely, the severity of the crimes charged and the public's interest in redress for the victim. To be sure, the defendant's new evidence does not diminish the seriousness of the sexual

assaults and the public's interest in redress, which the transfer judge found weighed heavily in favor of transfer to adult court.  See Bousquet, 407 Mass. at 859-860 (affirming transfer, especially in view of "heinous nature" of crime charged).

Nonetheless, as discussed supra, the new evidence was neither presented to the transfer judge nor cumulative of the information already before her; contrary to the Commonwealth's assertion and the motion judge's determination, the new evidence would have presented more than what could be gleaned from the defendant's criminal record.  Given the severity of the crimes, a robust presentation regarding his maturity and development was critical.  Transfer counsel's errors deprived the defendant of the opportunity to submit evidence, including regarding his maturity and development, for the transfer judge's consideration in weighing whether to transfer.  See Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 670 (2013), S.C., 471 Mass. 12 (2015) (noting that "children are constitutionally different from adults for purposes of sentencing" and have "greater prospects for reform" [citations omitted]).  As a result, while the transfer judge was presented with substantial evidence concerning the crimes charged, she had little information concerning the defendant's character, social relationships, employment history, or risk -- a lack of evidence

as to which the transfer judge specifically commented.[15]

4. Conclusion. The motion judge's order denying the defendant's motion for a new trial is vacated, and the matter is remanded to the Superior Court. The Superior Court shall remit this case to the Juvenile Court for a new transfer hearing. Because transfer counsel's lack of preparation for the defendant's transfer hearing amounted to deficient performance that prejudiced the defendant, the defendant is entitled to a new transfer hearing on the issue whether he should be tried as an adult on the criminal charges or be discharged; at the hearing, the evidence shall be limited in scope, concerning only the period between the crimes charged and the date of the first transfer hearing. These steps are to be carried out promptly.

The defendant's convictions shall remain in place provisionally: if, after a new transfer hearing, the Juvenile Court judge determines to discharge rather than to transfer the matter, the Superior Court shall, on the defendant's motion, vacate his convictions (subject to any appropriate appellate review in the ordinary course); if the Juvenile Court judge determines that transfer is warranted, the matter will proceed to the Superior Court for consideration in the first instance of

---

[15] Of course, at the new transfer hearing, the Commonwealth is entitled to marshal any critique of the defendant's submissions, including those concerning the defendant's proffered risk assessment set forth in its brief on appeal.

the remaining arguments raised but not yet addressed in the defendant's motion for a new trial.  See A Juvenile v. Commonwealth (No. 1), 380 Mass. 552, 562-563 (1980) (directing indictments to remain in place provisionally while Superior Court remits to Juvenile Court for prompt findings on appropriateness of transfer to adult court pursuant to G. L. c. 119, § 61, § 72A's predecessor, and prescribing alternative paths for resolution of matter depending on Juvenile Court's transfer determination).

So ordered.